JOHN REED, Respondent, v. GEORGE McCONNELL, Survivor, etc., Appellant.

In an action to recover damages for breach of a contract to form and continue a partnership for a specified term, the opinion of the witnesses as to the value of the contract to plaintiff, or as to what would have been his share of the profits had the contract been carried out, is incompetent and its reception error.

(Argued December 17, 1885; decided January 19, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 11, 1883, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*M. D. Grover* for appellant. The measure of damages in every case of breach of contract is the value of the contract. The party should be made good, but speculative and contingent profits cannot be recovered or proved by opinion. (*Van Ness v. Fisher*, 5 Lans. 236; *Griffin v. Colver*, 16 N. Y. 489; *Rogers v. Beard*, 36 Barb. 31; *Wagoner v. Corkhill*, 40 id. 175; *Pollett v. Long*, 58 id. 35; *Cassidy v. Lefevre*, 45 N. Y. 562; *Washburn v. Hubbard*, 6 Lans. 11; *Howe Machine Co. v. Bryson*, 44 Iowa, 24; *McWhiter v. Douglass*, Cald. [Tenn.] 591; 25 Ill. 86; *Bierbach v. Goodyear R. Co.*, 54 Wis. 208; 41 Am. Rep. 19; *Masterton v. Mt. Vernon*, 58 N. Y. 391; *Lincoln v. Sar. R. R. Co.*, 23 Wend. 425; *McIntyre v. N. Y. C. R. R. Co.*, 37 N. Y. 287; *Grant v. City of B'klyn*, 41 Barb. 381; *Nebraska City v. Campbell*, 2 Black, 590; *Walker v. Erie R. Co.*, 63 Barb. 260; *Giles v. Tole*, 4 id. 261.) Damages may include gains and profits prevented as well as losses sustained, provided they are certain and such as might naturally follow the breach; but the law excludes uncertain and contingent profits. (*McWhuty v. Douglass*, 1 Col.; *Schile v. Brokhaus*, 80 N. Y. 614; *White v. Miller*, 71 id. 133; *Walcott v. Mount*, 36

N. J. 13.) A person who is not interested in the business of a firm or in the capital invested, save that he is to receive a share of the profits as a compensation for his services, or for money loaned for the benefit of the business, is not a partner. (*Richardson* v. *Hughitt,* 76 N. Y. 55 ; *Moore* v. *Huntington,* 7 Hun, 426 ; *Smith* v. *Bodine,* 74 N. Y. 30 ; *Cary* v. *Fowler,* 87 id. 33 ; *Cox* v. *Heckman,* 84 H. L. C. 268 ; *Everson* v. *Power,* 89 N. Y. 527 ; *Wolfe* v. *Studenbaker,* 65 Penn. St. 459.)

*A. Pond* for respondent: The contract between the parties, whatever its precise terms were, if satisfactorily established by the pleadings and evidence, must be deemed and regarded as a legal and valid contract, inasmuch as the defendant's counsel expressly stipulated at the trial that they would make no claim that it " is void if found to be as stated by the plaintiff in his testimony or as established by the evidence in this case." (*Bommer* v. *Ames, etc., Hinge Co.,* 81 N. Y. 468.) Such stipulation is an entire waiver of such an objection, if any such previously existed thereto, an express waiver is as good as an implied one, and both exists here. (*Marston* v. *Swett,* 66 N. Y. 206 ; *Porter* v. *Wormser,* 91 id. 431, 450 ; *Durham* v. *Cudlipp,* id. 129, 134.) The referee committed no error in law in finding in favor of the testimony of the plaintiff, one party, against that of the defendant, the other party, nor indeed in finding against the uncontradicted evidence of the defendant, an interested party, if he did so find. (*Gildersleeve* v. *Landon,* 73 N. Y. 609 ; *Kavanah* v. *Wilson,* 70 id. 177 ; *Elwood* v. *W. U. Tel. Co.,* 45 id. 549, 554 ; *Russell* v. *Freer,* 56 id. 67, 69.) Moreover if the defendants turned off the plaintiff without cause as found by the referee, and thereby prevented the latter from aiding and assisting the defendants in earning profits, and also discontinued the business so that no profits could thereby be made or earned, the defendants are now estopped from claiming that no profits could have been made in the business had it continued. (*Gifford* v. *Waters,* 67 N. Y. 80 ; *Hand* v. *Campbell,* 26 Mich. 239, 245 ; *Bayley* v. *Smith,* 6 Seld. 499 ; *Dennis* v. *Maxfield,* 10 Allen, 142 ; *Leediv* v. *Am-*

*hurst,* 20 Beav. 239.) The plaintiff is entitled to recover as damages for the breach of the contract what its value to him was at the time of the breach, taking into consideration what the plaintiff has lost in services and money, and the gains in the shape of profits he would have received and which he has been prevented from receiving in consequence of such breach of the contract by the defendants. (*Danolds* v. *The State,* 89 N. Y. 36, 50 ; *Taylor* v. *Bradley,* 39 id. 129, 144 ; *Masterton* v. *Mayor, etc.,* 7 Hill, 61 ; *Bagley* v. *Smith,* 6 Seld. 489, 497, 498 ; *Schell* v. *Plumb,* 55 N. Y. 592, 595 ; Sedg. on Dam. [7th ed.] 119, 120 ; *Hay* v. *Gronoble,* 34 Penn. St. 9 ; *Wolfe* v. *Studebaker,* 65 id. 288 ; *Garsed* v. *Turner,* 71 id. 56 ; *Erie & Pitts. R. R. Co.* v. *Donthet,* 88 id. 243 ; *Dennis* v. *Maxfield,* 10 Cush. 138 ; *McNeal* v. *Reid,* 9 Bing. 68 ; *Rhodes* v. *Bond,* 16 Ohio St. 573 ; *Armor* v. *Oakley,* 131 Mass. 413 ; *Simpson* v. *Lon. & N. W. R. Co.,* 16 Eng. Rep. [Moak] 330 ; *Jaques* v. *Millar,* 22 id. 728.) The only possible way to prove the value of the contract between the parties at the time of its breach by the defendants, it having been broken before any business was done under it, was by the opinions of witnesses who had the peculiar knowledge and the requisite experience in the tannery business and upon the general subject to make them experts. (*Taylor* v. *Bradley,* 39 N. Y. 129, 114 ; *Mitchell* v. *Read,* 19 Hun, 419 ; 84 N. Y. 556, 559 ; *Eldridge* v. *Smith,* 13 Allen, 140 ; *Scattergood* v. *Wood,* 79 N. Y. 263 ; *Harpending* v. *Schoenmaker,* 37 Barb. 270, 289 ; *Whitbeck* v. *N. Y. C. R. R. Co.,* 36 id. 644 ; *Smith* v. *Gugerty,* 4 id. 615, 625 ; *Colwell* v. *Lawrence,* 38 N. Y. 71, 72 ; *Spencer* v. *Smith,* 46 Barb. 320, 322.) The fact that it was the wrongful and fraudulent act of the defendants, in refusing to perform the contract, that creates the necessity for proving its value, estops them from objecting to the only evidence by which alone it can be proved. (*Gifford* v. *Waters,* 67 N. Y. 81, 83 ; *Bagley* v. *Smith,* 6 Seld. 499 ; *Dennis* v. *Maxfield,* 10 Allen, 112 ; *Lord* v. *Campbell,* 26 Mich. 239, 245 ; *Leeds* v. *Amhurst,* 20 Beav. 239.)

EARL, J.   So far as we are now concerned with this action, it was brought to recover damages for the breach of an agreement on the part of the defendants to take the plaintiff into a partnership in a tannery.   The material facts as found by the referee are as follows : In the month of March, 1877, the plaintiff solicited the defendants to enter into the project of building a tannery at Oregon, in the county of Warren, in this State. He at the time owned a contract for the purchase of a site for the proposed tannery, and also a refusal or option for the purchase of fifty thousand cords of hemlock bark on the tree in the vicinity of the site.   In the month of May, 1877, negotiations were entered into between him and the defendants for the purchase of the tannery site and bark by the defendants and the building of the tannery, and about the middle of that month an agreement was entered into between him and them in regard to such purchase, the building of the tannery and the tanning of hides thereat as follows, viz. :   The defendants were to furnish to the plaintiff the money to purchase the tannery site, to erect a tannery thereon, and to supply the same with the necessary machinery, conveniences, tools, etc., to properly run the same so as to tan sole leather ; the plaintiff was to negotiate such purchase and superintend the building of the tannery, negotiate for the purchase of the bark (to be paid for by the defendants) and he was to receive from them for his services the sum of $1,000 per year; on the completion of the tannery and the purchase of the bark, the defendants were to stock the tannery with hides for tanning, to sell the leather tanned therefrom, and the plaintiff was to have the superintending of the tannery and conduct the business of tanning sole leather thereat ; the profits of such business were to be distributed as follows, viz. : After all expenses in carrying on and running the tannery, interest on all capital invested at the rate of seven per cent per annum, five per cent commission for buying the hides and six per cent commission for selling the leather tanned therefrom, had been taken out by the defendants, the balance of the profits, if any, was to be divided between the parties in the proportion of one-third to the plaintiff and two-thirds to the defendants ; the

plaintiff in superintending the building and running the tannery was to spend only one-half of his time for which he was to receive from the defendants the sum of $1,000 per year, to be included in the running expenses of the tannery; and his board and the keeping of his horses while at the tannery were to be paid by the defendants as a portion of the expenses of building, and after the erection, of running the tannery; the business was by the terms and conditions of the agreement to continue for the period of twelve years. Pursuant to the agreement, the tannery site, bark and bark contracts were purchased, the tannery was erected and stocked with hides and the business of tanning sole leather thereat was commenced. The defendants furnished hides to stock the tannery, and the plaintiff conducted the business of tanning and had charge of the tannery and business thereat until on or about the 1st day of October, 1878, when the defendants, without cause or provocation, and in violation of their agreement, discharged and removed the plaintiff from the business and the superintendency of the tannery and from all connection with the business, and then and ever since have declined and refused to employ and continue the plaintiff in the business and to pay the plaintiff any profits arising from the business, and have claimed, and still do claim and insist, that he has no right or title in the tannery building, bark or business, and refuse to carry out their agreement with him. And the referee found that the value of the agreement to the plaintiff would have been, if carried out in accordance with its terms, the sum of $12,000, and that he was, by reason of the breach of the agreement, damaged in that sum.

Upon the trial of the action the plaintiff was allowed to prove the value of his agreement and the amount of his damages by the opinions of witnesses. He, as a witness on his own behalf, was asked this question: " What, in your judgment, was the net value of your contract with the defendants, if carried out, to go into partnership with them, per annum, taking into consideration the rental value of the property, the expense of purchasing hides and sale of leather, and all the expenses connected

with tanning?" To this the defendants objected, among others, upon the ground that the court was to determine the value from the facts found, and that such value could not be determined from the opinion of the witness. The referee overruled the objection, the defendants excepted to the ruling, and the witness answered: "At least $3,000, per year, besides my stipulated compensation of $1,000." Another witness was asked this question: "What, in your judgment, is the value of a contract for tanning sole leather at Oregon tannery as follows: You are to have one-third of the net profits of that tannery for twelve years from July or August, 1877, to be included, in addition to the ordinary expenses of the tannery, $1,000 per year for foreman and general supervision, the interest on $20,000 at seven per cent cost of the tannery, and commissions, for the purchase of leather and purchase of hides?" There were the same objections, ruling and exception as before, and the witness answered: "I think from $3,000 to $4,000 per year." Another witness was asked this question: "State whether or not, in your judgment, tanning could be made profitable at Oregon tannery, the tannery to have the capacity of four hundred tons a year, tanning by the non-acid process, tannery to cost $20,000, the usual commissions to be paid, five per cent for buying hides and six per cent for selling leather, the contract to continue twelve years, commencing in January or February, 1878, with a contract for fifty thousand cords of bark at fifty cents a cord on the tree, on the Griffin lands, and roads built to land; if so, how profitable?" The defendants objected to this as incompetent and not the proper measure of damage. The referee overruled the objection, and the witness answered that the tannery could be made profitable and the profit would be at least $9,000 per year. Subsequently the same question was put to another witness and objected to upon the same grounds, and the objection was overruled, and the witness answered that a profit of $12,000 per year could be made for twelve or fifteen years.

We think these opinions were improperly received. They violated the general rule of evidence that witnesses must state

facts and not give opinions, and they do not come within any of its exceptions. There is no certain or proper basis for such opinions, and that they are of little or no value as guides to a just result plainly appears. Several witnesses of the defendants testified that the tannery, under the conditions mentioned in the contract, could make no profits, and the referee, upon the request of the defendants, found that no profits had been made in the tannery when the plaintiff left it, and that the running and operating the tannery, in a proper and workmanlike manner and with bark received under the contract with Griffin, had actually resulted in a loss down to January 14, 1880, near the commencement of the trial. The necessities of the case are not such as to justify the opinions. All the facts of any value can be stated and placed before the court, and from them the disinterested triers of fact can draw inferences and make up judgments better than witnesses generally friendly, to if not biased in favor of, the party calling them. The defendants could evidently find as many witnesses to swear that no profits could be made, as the plaintiff could to swear that profits could be made, and thus the ultimate conclusion as to profits and damages would after all have to be based upon the facts stated. In this case all the facts should be proved, and with the aid of the light which subsequent events have shed upon the value of this agreement, the trial court will be able to reach a conclusion as to such value more reliable and satisfactory than the opinions of witnesses. We refer, for a fuller statement of our views as to the proof and rules of damages, to the case of *Wakeman* v. *Wheeler & Wilson Manufacturing Company*, just decided by us.* The opinion in that case is quite applicable to this and sufficient authority for the conclusion we here reach.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.

* *Ante,* p. 205.