(4 Misc. Rep. 106.)

DEVLIN v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Common Pleas of New York City and County, General Term. June 5, 1893.)

1. FORM OF ACTION—LEGAL AND EQUITABLE RELIEF.
    Under the present system of procedure, if the court acquires jurisdiction of all parties necessary to the complete determination of a controversy, and the facts alleged and proved entitle plaintiff to particular relief, that relief must be awarded, whether it is legal or equitable.

**2. OBJECTIONS TO JUDGMENT—WHEN WAIVED.**

Where defendants proceed to trial without objection, under an order referring all the issues to a referee, with directions to determine the rights and interests of the parties, all objections to a judgment awarding affirmative relief between the different defendants will be deemed waived.

**3. RECEIVER PENDENTE LITE—TITLE TO PROPERTY.**

A receiver pendente lite has only the right to the possession of the property in controversy as an officer of the court, the title thereto remaining where it was when the receiver was appointed.

**4. CONTRACTS—VALIDITY—BRIBERY—SUFFICIENCY OF EVIDENCE.**

In an action for breach of a contract with a city for cleaning the streets thereof it appeared that H., acting on suggestions contained in an anonymous letter, deposited a sum of money on a table in a vacant room adjoining the assembly chambers of the common council, and to which others besides H. and the council had access. All the members of the council except two, who were deceased at the time of the trial, but whose credibility was unimpeached, swore that they knew nothing of the deposit, and that no part thereof had ever reached their hands. There was no evidence to the contrary. *Held,* that the evidence was insufficient to establish bribery in obtaining the contract.

**5. SAME.**

Nor could the fact that the brother of the mayor had a personal interest in the contract, or acted for an acquaintance or client who had such interest, affect the validity of the contract.

**6. CONTRACT WITH CITY—FRAUD IN OBTAINING—EFFECT.**

A contract made by a mayor on behalf of the city for cleaning the streets, though secured by the other party through corrupt means, is voidable only at the election of the city.

**7. SAME—LIABILITY.**

In such case it is not necessary that the city should ratify the contract, but, having entered upon the performance of the same, it cannot escape liability for the work done or a subsequent breach, in the absence of proof that it disaffirmed the contract on discovering the fraud.

**8. SAME—BREACH—MEASURE OF DAMAGES.**

By the contract in question, one H. undertook to keep clean "all the paved streets, avenues, lanes, alleys, and all gutters, wharves, piers, and heads of slips in the city" for five years at a certain sum per year, and was permitted to dispose of "all ashes, garbage, rubbish, and sweepings of every kind" for his own benefit. *Held,* in an action against the city for the breach of such contract, that the measure of damages was the difference between the amount agreed upon in the contract, together with the amount of profits which H. would have derived from the sale of the "garbage, ashes," etc., and the actual cost of completing the unperformed work at the time of the breach.

**9. SAME—EVIDENCE.**

In such action a witness could not testify to his estimate opinion as to the value of the contract, and the probable amount of profit it would have yielded during the unexpired term.

**10. ACTIONS AGAINST THE MAYOR OF NEW YORK CITY—COMPLAINT.**

Laws 1860, c. 379, § 2, provides that no action or special proceeding shall be maintained against the mayor, etc., of New York, unless the complaint or necessary moving papers allege that at least 20 days have elapsed since the claim upon which the action or special proceeding is founded was presented to the comptroller for adjustment, and not then unless the complaint or moving papers further allege that upon the second demand in writing upon the comptroller, he neglected or refused to make an adjustment or payment thereof. *Held,* that an omission to make such demand, or to allege the demand in the complaint, was not jurisdictional, but might be waived.

**11. APPEAL—REVERSAL—EFFECTS.**
> The reversal of a judgment places the parties where they stood at the first trial, and any objection, predicable then, of the insufficiency of the complaint or proof, is available on the second trial.

Pryor, J., dissenting.

Appeal from judgment on report of referee.

Action by John B. Devlin, as administrator of Charles Devlin, deceased, against the mayor, aldermen, and commonalty of the city of New York; and Thomas Hope individually, and as administrator of A. S. Hope, deceased; Samuel Donaldson; Martin Thatcher, as trustee of Tilly R. Pratt, deceased; and Charles F. Blish, as administrator of Charles D. Blish, deceased,—to recover for work performed under a contract with the city for cleaning the streets thereof, and for a breach of such contract by the city. From a judgment for plaintiff, entered upon the report of a referee, defendant mayor, etc., of the city of New York, appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

William H. Clark, (Francis Lynde Stetson and Franklin Bartlett, of counsel,) for appellant.

Joseph J. Marrin, T. C. Cronin, and E. T. Schenck, for respondents.

BISCHOFF, J. Pursuant to a resolution adopted by the common council and approved by the mayor on the 11th day of February, 1861, the corporation of the city of New York, on the 26th day of February, 1861, entered into a contract in writing with Andrew J. Hackley by the terms of which he undertook to clean and keep clean "all the paved streets, avenues, lanes, alleys, and all gutters, wharves, piers, and heads of slips in the city of New York," as therein particularly provided, for a period of five years from the day of the date of the contract; and the corporation agreed to pay him for such services an annual sum of $279,000 in semimonthly installments. The contract also expressly permitted Hackley to dispose of "all ashes, garbage, rubbish, and sweepings of every kind" for his own benefit. Immediately after it was awarded and entered into, Hackley conveyed a quarter interest in the contract each to Lewis Davis, Anthony S. Hope, and Thomas Hope, and on the 16th day of May, 1863, when further performance of the work was prevented by the municipal authorities, Hackley's entire original interest had by mesne assignments been transferred, one-eighth to Charles Devlin, one-half to Samuel Donaldson, one-quarter to Charles D. Blish, and one-eighth to Tilly R. Pratt. Hackley and his assignees at once entered upon the performance of the work, and so continued until the 16th day of May, 1863, when, as before stated, the officers of the municipal government refused to permit them to proceed, and assumed control of the street cleaning, assigning as the ground for so doing that Hackley and his assignees had failed to carry out the contract on their part. At this time there remained due and unpaid from the corporation five semimonth-

ly installments of $11,625 each, which had become payable by the terms of the contract; and a further sum of $2,345, the proportion for three days, had accrued for the installment next to become payable, amounting in the aggregate to the sum of $60,450. After an ineffectual attempt on the part of Devlin, Donaldson, and Blish to induce the proper municipal officers to adjust their respective claims for moneys earned under the contract, and for damages resulting from the corporation's alleged breach of it, Devlin, in January, 1864, instituted this action to recover his share of both demands. As codefendants with the corporation he named Anthony S. Hope, Thomas Hope, Samuel Donaldson, Charles D. Blish, and Tilly R. Pratt, asserting in his complaint that they severally claimed to be entitled to some portion of the moneys due and the damages recoverable under the Hackley contract from the defendant the mayor, etc. A former trial resulted in a judgment for plaintiff upon both demands urged against the corporation, but on appeal the court of appeals reversed it on the particular ground that the recovery erroneously included as an element of the damages resulting from the breach of the contract benefits which would have accrued to Hackley or his assignees from subcontracts had they been permitted to proceed with their performance of the work. The authority of the mayor and common council to enter into the contract with Hackley, the assignability of the latter's interests, the right to enforce these interests by his assignees, and plaintiff's right to recover in this action for moneys earned under the contract, as well as for damages resulting from its breach by the corporation, were, however, sustained. Devlin v. Mayor, etc., 63 N. Y. 8. On the second trial any justification of the corporation's rescission of the contract because of Hackley's or his assignees' nonperformance or negligent performance was substantially abandoned. The plaintiff again recovered to the extent of his interest therein both for moneys earned and damages, and a like recovery was awarded against the defendant the mayor, etc., in favor of each of its codefendants.

It is now urged on behalf of the defendant (appellant) the mayor, etc., that this action is for common-law relief only; that plaintiff's rights as assignee of part of the several demands made against it under the Hackley contract are of equitable cognizance, enforceable only by an action in equity; and hence that plaintiff was not, nor is his administrator, entitled to maintain this action. We do not differ from the view taken by the general term of this court on a former appeal, and concur that the only relief sought by plaintiff against the defendant the mayor, etc., at the inception of the action was for the enforcement of common-law demands, (Devlin v. Mayor, etc., 54 How. Pr. 50--58,) and are nevertheless of the opinion that the action was properly brought. That a part owner of one entire demand may recover his share from the debtor in assumpsit was ruled in Risley v. Bank, 83 N. Y. 318. Under our system of remedial justice introduced by the adoption of the Code of Procedure, both legal and equitable relief may be administered in the same action. It matters not that the complaint prays judgment

for common-law relief only. If the court has acquired jurisdiction of all the parties necessary to a complete determination of the controversy, and the facts alleged and proved entitle the plaintiff to particular relief, that relief must be accorded him irrespective of whether or not it is denominated legal or equitable. The right of recovery no longer depends upon any distinction in the form of procedure, but upon the facts averred and proved. The Code has swept away all ancient distinction between "legal" and "equitable" actions, and has substituted therefor one form of action,—a "civil action." "In a purely legal action, or, to speak more correctly, in an action where the plaintiff sets forth and mainly relies upon a legal primary right or title, and asks a remedy which is purely legal, he may still invoke the aid of an equitable right or title which he holds, or of which he may avail himself, in order to maintain his contention, and obtain the legal relief which he seeks. This is a more indirect union of legal and equitable rights and causes of action than exists in any of the instances heretofore discussed; but it is none the less a union." Pom. Rem. & Rem. Rights, (2d Ed.) § 85, p. 105. To the same effect is Stevens v. Mayor, etc., 84 N. Y. 296. Here the complaint sets forth every fact essential for the predication of the claims for moneys earned under the contract and for damages resulting from its breach by defendant the mayor, etc. It likewise avers that the plaintiff and the defendants other than the mayor, etc., are entitled to the whole of such claims in the proportion of their several interests therein as the assignees of Hackley. If these allegations are sustained by the proof, what does it matter that plaintiff's rights are "equitable," not "legal?" He would in either case be entitled to recovery, and the court would be enabled to proceed to a complete determination of the controversy.

Next defendant (appellant) the mayor, etc., urges that, though plaintiff's right to recover in this action upon sufficient proof be conceded, the judgment is notwithstanding erroneous, in so far as it awards affirmative relief against defendant (appellant) and in favor of its codefendants; that, assuming the action to be controlled by the provisions of the Code of Procedure which was in force at the time of its commencement, section 274 does not authorize such a judgment; and, if the provisions of the Code of Civil Procedure (section 1204) are held to apply, it appears affirmatively from the evidence that the defendants to whom the relief was awarded did not comply with the provisions of section 521, which require as a condition to the award of affirmative relief to a defendant against a codefendant that a copy of the answer of the defendant seeking the relief be served upon the defendant against whom it is sought at least 20 days before the trial. Whatever merit, however, this contention might otherwise have presented is entirely dispelled in the instance of the judgment appealed from, because the defendant (appellant) elected to proceed to trial without objection under an order referring all the issues for trial to a referee, which, by adoption of a former like order, specifically directed the latter, if

he should determine that there is any money due from the defendant (appellant) by reason of the matters set forth in the complaint, "that he also decide and determine to whom the same shall be paid, and the rights and interests of the said plaintiff and the other defendants, respectively, in and to the sum of money so found due from defendant the mayor, aldermen, and commonalty." Derham v. Lee, 87 N. Y. 599; Chapman v. Forbes, 123 N. Y. 532, 26 N. E. Rep. 3. We do not fail to observe that defendant (appellant) did object to the award of affirmative relief against it in favor of its codefendants, but this was not until the trial was concluded, and obviously, therefore, after the objection was waived. So, also, it may be seriously questioned whether, after affirmance by the court of appeals of the order denying defendant's (appellant's) motion to vacate the referee's report (Devlin v. Mayor, etc., 128 N. Y. 615, 28 N. E. Rep. 253) the present objection to the judgment is still available, and whether, in any event, the objection should not have been presented by motion to vacate the judgment, instead of by an appeal therefrom.

It appears that after this action was commenced Charles Devlin instituted another action in the supreme court against the same defendants for an accounting by Anthony S. Hope, as trustee of the Hackley contract, for moneys received by him, and to have the ultimate rights of the parties to those moneys and the moneys and damages recoverable from the corporation determined; that in the supreme court action Cyrus Curtiss was appointed receiver of such moneys and damages, with power to sue therefor; that this power was subsequently revoked, and a suit commenced by the receiver dismissed for want of prosecution; that the supreme court action is pending undetermined, and the order appointing a receiver remains in force; but that Mr. Curtiss is deceased, and that his successor has not been appointed. In view of the foregoing, defendant (appellant) urges that neither the plaintiff nor its codefendants can recover in this action, because the title to any claim for moneys earned and damages for breach of contract against the corporation under the Hackley contract was vested in Mr. Curtiss as receiver, and upon his death devolved upon the supreme court, pending the appointment of his successor. In support of its contention counsel for defendant (appellant) cite cases which affect the rights of receivers appointed of the property of judgment debtors in supplementary proceedings. Those cases, however, are readily distinguishable. A receiver appointed of the property of a judgment debtor is invested with title by express provision of law. Code Proc. § 298; Code Civil Proc. § 2468. Mr. Curtiss' appointment was pendente lite only. No transfer by act of the parties appears to have been made to him. A receiver so appointed acquires no title to the property in dispute. His right is one of possession merely, as an officer of the court, and the title remains precisely where it was when he was appointed. Keeney v. Insurance Co., 71 N. Y. 396; Decker v. Gardner, 124 N. Y. 335, 26 N. E. Rep. 814. True, the parties may be under a disability by reason of the injunction

issued in the supreme court action, which prevents them from receiving payment, but that does not hinder them from litigating their rights against defendant (appellant) to judgment; and the Code of Procedure (section 121) permitted, as the Code of Civil Procedure (section 756) now permits, an action to be prosecuted to judgment in the name of the original parties, notwithstanding that there may have been a devolution of interest subsequent to its commencement. That plaintiff may render himself liable to punishment for violation of the injunction issued in the supreme court action cannot operate as a defense to or relieve defendant (appellant) from any just obligation owing by it to him. If defendant (appellant) intends to dispute the right of the plaintiff and his codefendants to receive payment of any sums awarded them by judgment in this action because of the pendency of the supreme court action, and the appointment of a receiver, and the issuance of an injunction therein, such must be done upon application to the supreme court.

From the evidence introduced in support of defendant's (appellant's) plea that the Hackley contract was secured by means of bribery, and that it is therefore void on grounds of public policy, we can discover no such preponderance as would justify our reversal of the referee's finding that there was no bribery. It can serve no useful purpose to discuss the evidence in detail, since, in any event, the plea is untenable. That Thomas Hope gave Hackley $40,000, and that the latter, acting upon the suggestion contained in an anonymous letter, deposited the sum in a paper package, upon a table in a vacant room adjoining the assembly chamber of the common council, and to which persons other than Hackley and the members of the common council had equal access, unquestionably shows, if we assume the truth of the confession of a self-impeached witness, that Hackley not only intended to bribe, but that he actually parted with a large sum of money for that purpose to some unknown person; but, in view of the sworn denial of all but two members of the common council, who were deceased at the time of the trial of this action, and whose credibility is unimpeached, that they knew of Hackley's act, or that they, or some one for them, ever received any part of the sum deposited by him, and in the absence of any evidence from which their knowledge of Hackley's act, or their receipt of any portion of the money so deposited by him, may be reasonably inferred, it is the merest conjecture to say that any member of the common council was bribed, and thus to cover these public officials with infamy, and that without according them as much as a trial of the charge. There have been instances where public officials have succumbed to corrupt influences in the performance of duty, and such may again occur. But are we therefore justified in placing them all under the ban of suspicion and to convict them upon accusation only? Is it a fair inference from the fact that one person was known to give the bribe that he found even one of the officials who were concerned in the award of the contract ready to take it? To do so would be to argue and draw

conclusions, not from general rules, but from exceptions thereto, and subject a class to indictment because of the criminal act of a member,—a position neither justified by logic or experience. Reckless accusations of this kind are sometimes made, which, upon investigation, prove to be even without the shadow of support, being but ruthless aspersions of character; and we, as judges sworn upon our oaths to a fearless and impartial discharge of duty, should guard against the influences of temporary partisan clamor, lest we stoop to the perpetration of injustice, and so become derelict to the trust reposed in us. In criminal prosecutions the truth of the accusation must be established by the evidence beyond a reasonable doubt; in a civil action by a preponderance of the evidence. No surmise, no conjecture, and no suspicion is allowable in either case, but the presumption of innocence must prevail in the absence of legal proof. Ferry Co. v. Moore, (N. Y. App.) 6 N. E. Rep. 293. Nor does it help defendant's (appellant's) plea any that a brother of the then mayor of the city had either a personal interest in the contract awarded to Hackley, or acted on several occasions for an acquaintance or client who had such an interest. By what authority may we say that the relatives of one in public office must abstain from all contact with matters concerning the public, lest they will give substance to an accusation of corruption? To assume the truth of the accusation against the mayor from the fact alone that his brother or his brother's client was interested in the contract would be monstrous. To indulge such assumptions generally would tend to render public office a degradation. It would cease to be honorable preferment. Every public servant, no matter how faithful his devotion to the public interest, may be assailed by like imputations. We think it a much more plausible, and the only possible, deduction from the facts established on the trial that Hackley's eagerness to secure the contract caused him to fall a victim to the imposture of some unknown and unascertained person, who, by some undisclosed means, had learned that the former's bid for the contract was favorably considered by the common council.

Aside from the insufficiency of the evidence, and as already intimated, we are of the opinion that the plea that the contract was void because tainted with bribery is ineffectual. No doubt a promise made to induce another to act corruptly in the public service is absolutely void and of no effect on grounds of public policy. But in such a case the parties to the contract are in pari delicto. Not so with a contract entered into by a public official on behalf of the state or a municipal body, and which in itself involves only the performance of lawful acts, and the observance of public affairs, though it was secured by the other contracting party through corrupt means. In such a case the official is but the agent of one of the contracting parties. The parties to the contract are not in pari delicto, and, as in other instances of contracts induced by fraud, the contract is not void, but voidable at the election of the party defrauded. Cobb v. Hatfield, 46 N. Y. 533; Gould v. Bank, 86 N. Y. 75. Now, assuming that Hackley did secure the contract award-

ed him by inducing the officials concerned in its award to act corruptly, it was, notwithstanding that fact, operative as against him, unless the corporation saw fit to disaffirm it. A contrary rule would have enabled ·Hackley to urge his own wrongful acts to evade liability under the contract. It was not necessary, therefore, that the corporation should ratify the contract; and, having entered upon its performance, it cannot escape liability for the work done or the breach subsequently committed, in the absence of proof that the contract was disaffirmed by it upon discovery of Hackley's fraud. It was not claimed for defendant (appellant) that the contract was disaffirmed, and the pleadings and evidence conclusively show that no disaffirmance was attempted. The work continued for two years and three months, during which time all but five of the semimonthly payments were made to Hackley or his assignees. On May 16, 1863, it was rescinded on the part of the corporation because of alleged default in performance on Hackley's part or the part of his successors in interest. After that time nothing remained to be disaffirmed, as the contract was at an end. Assuming, however, that the corporation could thereafter avail itself of its right to disaffirm, it then appears from the counterclaim in this action for damage claimed to have been sustained by the defendant (appellant) from Hackley's alleged breach of contract that the right was not only never exercised, but that the contract was expressly affirmed. Upon no other theory could the enforcement of the counterclaim have been attempted.

We are, however, of the opinon that the judgment must be reversed upon other grounds. The measure of the damages which are recoverable in this action against the defendant corporation for breach of its contract is the difference between the amount it agreed to pay, to which should be added the amount of profits which Hackley or his assignees would have derived from the sale of ashes, garbage, manure, etc., and the actual cost to be incurred in completing the work remaining unperformed at the time of the breach. Devlin v. Mayor, etc., 63 N. Y. 8. Turning to the evidence upon which plaintiff and the defendants other than the mayor, etc., rely for the amount of their recovery, it will be found to consist wholly of the testimony of Charles D. Blish, Samuel Donaldson, William H. Adams, and John Satterlee, the several persons who at different times during its progress had charge of the work under the contract. Neither of these witnesses testified even remotely to the cost of the work, or the actual amount of ashes, garbage, manure, etc., yielded from performance during the several seasons of the year; and so we are not afforded any basis for computing the amount of damages. ᐧ In each instance the witness was permitted, against the repeated objection of counsel for the defendant, (appellant,) to testify directly to his estimate and opinion as to the value of the Hackley contract, and the probable amount of profit which it would have yielded to the contractor or his assignees during its unexpired time. This kind of testimony has so often been condemned by the courts as incompetent that references to particular cases seems un-

necessary.   See, however, Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. Rep. 264; Reed v. McConnell, 101 N. Y. 270, 4 N. E. Rep. 718.   It is entirely speculative, and, if received, substitutes the opinion of the witness for the facts, thus usurping the province of the court and jury to determine the extent of the damages from evidence which admits at least of some degree of computation.   The exception taken to the admission of the objectionable evidence pointed out, therefore, must be sustained.   The exceptions last referred to affect only so much of the judgment as awards recovery for damages resulting from the corporation's breach of contract, and, as the referee has found the amount due from the defendant (appellant) for moneys earned separate and apart from the other damages, the judgment may be affirmed upon the stipulation of the respondents to abandon their claim for damages.   Goodsell v. Telegraph Co., 109 N. Y. 147, 16 N. E. Rep. 324.

At the time of the commencement of this action chapter 379 of the Laws of 1860 continued in force.   Section 2 thereof provided that no action or special proceeding should be prosecuted or maintained against the mayor, etc., of New York unless the complaint or necessary moving papers alleged that at least 20 days had elapsed since the claim or claims upon which the action or special proceeding is founded be presented to the comptroller for adjustment, and not then unless the complaint or moving papers further alleged that upon a second demand in writing upon the comptroller he had neglected or refused to make an adjustment or payment thereof.   This requirement constituted a condition precedent to plaintiff's right to institute and maintain the action, and noncompliance therewith, if still in force, and applicable to the case at bar, would be fatal.   Reining v. City of Buffalo, 102 N. Y. 308, 6 N. E. Rep. 792.   Objection to the insufficiency of the complaint because of its omission to allege the several demands upon the comptroller and his neglect or refusal to adjust or pay the claims was raised by counsel for the defendant (appellant) at the opening of the trial, and again when the introduction of evidence was closed, by motions for dismissal, and to their denial due exception was taken.   A further motion to dismiss the complaint was made for insufficiency of the evidence to sustain the several causes of action, it not appearing that any demand sufficient to satisfy the requirement of the statute was in fact made.   This was likewise denied, and due exception taken to the ruling.   We do not, however, regard either the omission to make the demand or the omission to allege the demand in the complaint as jurisdictional, (Russell v. Mayor, etc., 1 Daly, 263; Sheel v. City of Appleton, 49 Wis. 125, 5 N. W. Rep. 27,) and think that, like other statutory provisions which are made for the benefit of a party to the action, both the demand and its nonallegation may be waived, (Roberts v. Baumgarten, 126 N. Y. 336, 27 N. E. Rep. 470; Sherman v. Mc-Keon, 38 N. Y. 274; Shutte v. Thompson, 15 Wall. 151,) but are unable to accede to the proposition of counsel for the respondents

that the objections were waived in the present instance because not raised on the former trial. The reversal of the former judgment had the effect of relegating the parties to precisely where they stood at the line of the first trial, and any objection which was predicable then of the insufficiency of the complaint or proof was available on the second trial. Nor would we be able to aid respondents by amendment of the complaint to conform to the requirement of the statute referred to, since it is apparent from the evidence and the referee's finding that the necessary demands were not made. But the statute requiring the demands and their allegation in the complaint, however, did not in any sense abridge respondents' contractual rights, or impair defendant's (appellant's) obligation. It affected the remedy only, (Taylor v. Mayor, etc., 20 Hun, 292, affirmed 82 N. Y. 10,) and its subsequent repeal by chapter 383 of the Laws of 1870, which is in conflict therewith, was operative upon pending actions, (Stocking v. Hunt, 3 Denio, 274; Supervisors v. Briggs, Id. 173; In re Palmer, 40 N. Y. 561.) Upon the repeal of the statute in force at the time of the commencement of this action respondents had a vested right of action against appellant (defendant) arising under the contract with Hackley upon common-law principles, which remained unaffected by subsequent legislation in so far as the effect of the latter would be to impair it. Myer, Vested Rights, 105 et seq., and cases cited. Hence the exceptions which are founded upon the objections that the complaint does not conform to the requirements of chapter 379 of the Laws of 1860, and that the proof was insufficient under the same statute, are ineffectual.

It is unnecessary to discuss the question of respondents' rights to the allowance of interest upon the damages recoverable by them for defendant's (appellant's) breach of contract, since, upon the exceptions taken to the admission of incompetent evidence, and already noticed, the judgment must, in any event, in respect to those damages, be reversed. But we incline to the opinion that the interest was properly awarded. Wilson v. City of Troy, 135 N. Y. 96, 32 N. E. Rep. 44; 1 Suth. Dam. p. 113, § 63; Dana v. Fiedler, 12 N. Y. 40, 50.

Our conclusion is that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant (defendant) against the respondents to abide the event, unless the respondents will stipulate to waive any claim against defendant (appellant) for breach of contract, inclusive of the interest thereon, in which event the judgment, in so far as it awards recovery for moneys earned up to May 16, 1863, is affirmed, but without costs to either party as against the other.

Judgment reversed, and new trial ordered, with costs to defendant (appellant) to abide the event, unless respondents stipulate to waive any claim against defendant (appellant) for damages for breach of contract, inclusive of the interest thereon, in which event the judgment, in so far as it awards recovery for moneys

earned under the contract on May 16, 1863, is affirmed, without costs to either party as against the other.

BOOKSTAVER, J., concurs.

PRYOR, J., (dissenting.) After a chequered career of nearly 30 years' controversy in the courts, the case has terminated at last in a judgment in favor of the respondents for a sum very little short of a million dollars. Except under compulsion of obvious and essential error, I cannot consent, by reversal of the judgment, to start the cause again on a course of doubtful and indefinite litigation, from which, by the death and disappearance of witnesses, it is not likely to issue in a result as consistent with the interests of justice as the conclusion now before us. So long ago as 1875 the court of appeals settled the principles upon which, if the respondents be entitled to a recovery, the amount of their indemnity should be adjusted, namely, a credit for the money actually earned in performance of the contract, and an allowance for the money they would have earned but for the wrongful repudiation of the contract. In conformity with this decision, the referee determined the sum for which he directed judgment. That the appellant established no defense to the action, and that the respondents were entitled to a judgment, is a result from which, in the opinion of my brethren, there is no possible escape. But, while affirming the judgment in so far as it awards compensation to the respondents for actual earnings under the contract, they reverse it as to the allowance of damages for breach of the contract by the appellant; and they subject the respondents to the hard alternative of renouncing the substantial benefit of their judgment, or else submitting to another trial of their claim under circumstances which preclude the possibility of establishing it by attainable evidence. Ordinarily, upon reversal of a judgment, whether for error in law or in fact, the respondent, if he have a case, is at no loss to repair the defect which caused his miscarriage; but as, in the present instance, the respondents are defeated for lack of evidence, and as by lapse of time other evidence is by necessity unavailable, the new trial awarded them is obviously an illusory advantage. And yet, if the judgment be invalid, we have no choice but to reverse it. The measure of damages to the respondents for the breach of the contract by the appellant "is the difference between the contract price and what it would have cost to perform the contract." Devlin v. Mayor, etc., 63 N. Y. 9. It is not denied that the referee duly observed the rule of damages thus authoritatively propounded, but the position in the prevailing opinion is that his conclusion as to the amount of damages is without the support of legal evidence. Conceding, for argument, that evidence of opinion and speculation by the witnesses as to the amount of damages be in the case, still the error in its admission is obviated by the explicit assurance of the referee that he excluded it from consideration. Only prejudicial error invalidates a judgment, and evidence disregarded cannot possibly prej-

udice. But, my associates say, rejecting the illegal evidence, the conclusion of the referee stands upon no proof. I am clearly of the contrary opinion. The sum to which the respondents are entitled being the difference between the contract price and the expense of the work, the question before the referee was, what would have been the amount of that expense? The conclusion that nothing in the record authorizes an answer to the inquiry involves, in my judgment, a misconception of the evidence. On the contrary, the cost of the work is shown by the testimony of witnesses who give not a surmise, nor an estimate, but positive proof of the fact from their own personal knowledge. Men of skill and experience who superintended the performance of the contract, deposing from recollection and from memoranda of expenditures made at the time under their supervision, detail minutely the cost of the work for each and every ward of the city. The cost of the work was reduced in proportion to the value of the garbage and ashes reserved as a perquisite of the respondents, and that value is made apparent by indisputably competent testimony. Opinion as to the value of the contract may have been inadmissible, (Reed v. McConnell, 101 N. Y. 270, 4 N. E. Rep. 718,) but the actual profits upon work under the contract is not the subject of speculation but of knowledge; and to such profits, as a fact, competent testimony was adduced. Disregarding, however, this class of evidence, as the referee reports that he did, and still his reference as to the amount of damages stands upon the solid ground of legal proof. "A person violating a contract should not be permitted entirely to escape liability because the amount of the damage he has caused is uncertain. Prospective profits, so far as they can properly be proved, and which would certainly have been realized but for the defendant's default, are allowable as damages, although the amount is uncertain." Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. Rep. 264. With this rule for guidance, I am conducted to a secure and satisfactory conclusion. By the testimony of witnesses speaking from knowledge and to facts, the damages found by the referee are sufficiently shown, and my unhesitating conviction is that his decision is so supported by the evidence as to preclude this court from disturbing it. Baird v. Mayor, etc., 96 N. Y. 567; Batjeman v. Railroad Co.; (Com. Pl. N. Y.) 20 N. Y. Supp. 628; Aldridge v. Aldridge, 120 N. Y. 614, 617, 24 N. E. Rep. 1022.

The judgment should be affirmed, with costs.