HELEN L. BRIGGS *vs.* MINNEAPOLIS STREET RY. CO.

Argued Dec. 15, 1892.   Decided Dec. 23, 1892.

**Evidence Considered.**

*Held*, that there was no evidence reasonably tending to show that the death of plaintiff's intestate was caused by the acts of the defendant.

**Hypothetical Questions to Expert Witnesses.**

Certain hypothetical questions to expert witnesses *held* to have been properly excluded—*First*, because they did not fully and accurately state the facts in evidence; and, *second*, because the matter inquired of was not, under the circumstances, the subject of expert testimony.

Appeal by plaintiff, Helen L. Briggs, administratrix of the estate of Arthur S. Briggs, deceased, from an order of the District Court of Hennepin County, *Lochren,* J., made June 25, 1892, refusing her motion for a new trial.

The defendant, the Minneapolis Street Railway Company, was sued for negligently causing the death on September 5, 1891, of Arthur S. Briggs, plaintiff's husband. At the close of plaintiff's evidence, the judge directed the jury to return a verdict for defendant, saying there was no evidence that would justify a finding that the husband's death was caused by the acts of defendant's servants. Plaintiff excepted and now appeals.

*Geo: W. & Ed. T. Teitsworth* and *Brooks & Hendrix,* for appellant.

*Koon, Whelan & Bennett,* for respondent.

MITCHELL, J. This was an action to recover damages for the death of plaintiff's intestate, caused by the alleged wrongful acts of defendant's servants. The principal error assigned is the dismissal of the action by the court, when the plaintiff rested, on the ground that there was no evidence that the death of deceased was caused by the acts of defendant. The evidence was to the effect that deceased had been for eighteen years subject to frequent attacks of illness from heart disease. During these attacks, which usually lasted for only a few minutes, he became faint, turned pale, and vomited. According to the testimony of his friends the attacks did not appear to have become more frequent or severe during the years he had been subject to them. On the evening of his death, having just taken his seat as a passenger on one of defendant's cars, he was seized with one of these attacks, turned very pale, vomited, and "fell back" or "leaned over" in his seat, "as if in a faint," or "just as a drunken man would." The driver of the car, supposing he was drunk, took hold of him with both hands by one arm, and "took" or "jerked" him off his seat, and "took" or "dragged" (using the terms of different witnesses) him towards the car door, when a passenger took hold of him by the other arm and assisted the driver in removing him from the car, and taking or "dragging" him across the street to the sidewalk, where they laid or set him down. When they placed him on the sidewalk he was still breathing, but made no other motion, and died within a very few minutes. When the driver first went up to him on the car to lay hands on him, he partially raised his head

and in a feeble voice said, "Don't, don't," but never spoke or showed any signs of consciousness afterwards, and while they were removing him he was "as limp as a rag." Some of the witnesses explain that by "dragging" they meant that the lower part of his body was on the car floor or the ground. It may be conceded that the evidence tended to show that the driver acted rudely and roughly and consequently wrongfully, but there is nothing in the evidence tending in the slightest to show that he did anything that could or would have caused any serious or material physical injury to any one in ordinary health. There were no marks of external violence on his body. Without going into details, or using medical terms, an autopsy disclosed that his heart was very badly diseased, there being both a fatty degeneration and valvular disease of that organ, which was confessedly the immediate cause of his death. In short, he was in that condition that death was liable to ensue at any time whenever extra exertion was thrown upon the heart from any cause whatever, such as physical exertion, excitement, or the like. The strain in vomiting during one of these attacks was liable to have that effect, and cause death. The disease is progressive, although a person afflicted with it might live for years, or even to old age.

Of course, it is not enough to entitle plaintiff to recover that defendant's servant was guilty of wrongful acts for which the deceased, had he lived, could have maintained an action. It was incumbent on her to prove that such wrongful acts caused the death; that but for such acts death would not have occurred; and this she must prove by evidence furnishing a reasonable basis for such a conclusion. It must not rest on mere conjecture. *Orth v. St. Paul, M. & M. Ry. Co.*, 47 Minn. 384, (50 N. W. Rep. 363.) It is, of course, possible that if deceased had not been removed from the car in the manner in which he was he might have survived this attack as he had former ones, but the evidence left this too much in the domain of mere guesswork or conjecture to furnish a reasonable basis on which to rest a verdict. Had the driver commenced to remove the deceased from the car before he became ill, there would have been some basis for concluding that the consequent excitement brought on the attack, and hence caused the death; or had the deceased been

still physically able to resist the attempt to remove him from the car, there might have been room to argue that the effort and excitement threw extra exertion on the heart, and thus produced the fatal result. But the fact was that the attack had seized the deceased, and he had become utterly incapable of resistance, before the driver attempted to touch him. There is no apparent ground for claiming that the physical effort of others to remove him could have had any such effect on the action of his heart; and if it be said that the mere consciousness that he was about to be subjected to the indignity of being ejected from the car as a drunken man might have caused excitement and consequent quickened action of the heart, the answer is that this is mere conjecture, for the effect which this might have on a man would depend on his temperament. What would produce such an effect on one man might not on another. Neither will it do, without some more reliable basis in the evidence to establish the relation of cause and effect between the acts of the driver and the death of the deceased, to say that because he survived all previous attacks, but died in this one, therefore the different result was due to these acts. With a progressive disease such as deceased had, there must always be a last attack, and, for anything that can be known, the mere physical exertion in vomiting, the effort in getting upon the car, or the labors of the day, might have been the efficient cause of the fatal result in this instance. The evidence was entirely too uncertain and conjectural to form a basis of judicial action. Any verdict rendered on it in favor of the plaintiff would be mere guesswork.

2. The other assignments of error are predicated upon the action of the court in excluding certain hypothetical questions propounded to medical experts. These witnesses had not been present at the autopsy, neither had they heard the other witnesses testify, but the questions were based upon what was assumed to have been the evidence in the case, and embodied what purported to be a statement of all the facts testified to on the trial, both as to the physical condition of the deceased and all that occurred in the car on the evening in question, and then asked the witnesses what, in their opinion, was the immediate cause of the death. The questions were properly excluded, for two reasons: *First.* They did not either fully

or correctly state the facts in evidence, some being omitted and and others stated so inaccurately as to be misleading. A comparison of the evidence with the questions will demonstrate the vice to which we refer. *Second.* The matter inquired of was not, under the circumstances, the subject of expert evidence, but was the ultimate fact to be determined by the jury. It was entirely proper to inquire of these experts as to the probable effect of excitement or physical exertion upon one in deceased's diseased condition, but we never knew of a case, and have not been referred to any, where it was ever permitted to repeat to a witness all the evidence in the case, and then ask him what verdict, in his opinion, ought to be rendered in the case, which was in effect what was sought to be done in this instance. Courts have gone far enough in subjecting life, liberty, and property to the mere speculative opinions of men claiming to be experts, and we are not disposed to extend the rule into the field of mere hypothetical conjecture, which, in a case like the present, must necessarily have been so uncertain and unreliable as to be purely conjectural, and utterly unsafe for either court or jury to adopt.

He would have been a very rash witness who, in answer to the question propounded, dependent, as it might be, on so many hidden and secret conditions of which he could know nothing, would have assumed to assign any other immediate cause for the death of the deceased than the heart disease, to which he was subject, or to say that death would not have ensued but for the acts of the car driver.

Order affirmed.

(Opinion published 53 N. W. Rep. 1019.)