J. D. Winn, Administrator, Appellee, v. Christian County Coal Company, Appellant.

1. EVIDENCE—*what not part of res gestae.* The recital of the manner of an accident some time after the occurrence thereof is not part of the *res gestae.*

2. EVIDENCE—*what does not waive error in admission of.* To rebut incompetent evidence is not to waive the objection thereto.

3. MASTER AND SERVANT—*what within doctrine of assumed risk.* A risk is an assumed one whenever a servant is familiar with all the conditions and circumstances connected with his employment and the manner in which the work is done by the master and he is not relieved from the assumption of the risk because there may be a safer method than that adopted by the master, and the master is under no obligation to use reasonable means to remove danger which was open and visible to the servant and known to him and who continues his employment knowing this dangerous condition to have existed, unless the servant has made some complaint and asked for an alteration or removal of the cause.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Christian county; the Hon. A. M. ROSE, Judge, presiding. Heard in this court at the May term, 1909. Reversed. Opinion filed May 28, 1910.

J. C. & W. B. McBRIDE, for appellant.

HOGAN & WALLACE, for appellee.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

This is an action brought to recover damages on account of the death of D. W. Speakman. On the trial a verdict was recovered for $3,500 and judgment rendered on the verdict from which defendant appeals.

The declaration consists of three counts. The first count charges appellant with owning and operating a certain switch track constructed upon a down grade upon which cars passed at great speed, that deceased was in its employ as a servant, that his employment required him to go between the cars to couple cars loaded with coal, and that while so engaged certain other servants who were not fellow servants of deceased negligently started down this switch track a large number of cars loaded with coal without having brakes set, and without anyone being in control; that the cars by their impact against certain other cars caused them to move with great speed, force and violence and strike the car about which deceased was engaged in the line of his duty and injured deceased by reason whereof he died. This count also avers that the servants who started the cars were not fellow servants of deceased and the risk was not one assumed by his employment.

The second count avers the use and occupation of a certain railroad track in the conduct of the business of appellant and that appellant negligently left a large number of cars loaded with coal upon said track in such position they could be easily started; that while deceased was engaged in his work in coupling the cars upon a side track of appellant certain other cars so left upon said track were by some means unknown to deceased started down the grade of the switch track and by reason of which they struck with great force and violence the end of the car at which deceased was engaged by reason of which he was injured and died, and alleging that the cause of the injury was not a risk assumed by him in his employment and that the other servants in employ of defendant handling the cars were not fellow servants.

The third count avers the construction of the railroad

track in a dangerous and unsafe manner; that it was constructed on such a grade that cars run down the same with great force and velocity and while so moving ran and struck against a car, at which deceased was engaged, with such force and violence as to cause his death.

The plea was general issue.

The causes assigned and argued by appellant for reversal of this cause are: First, that deceased was not in the use of due care and caution for his own safety; second, that the risk was one assumed by the deceased in his employment; third, on account of given and refused instructions.

The evidence in this case discloses that appellant was engaged in the business of mining coal. That at its shaft it had a number of side tracks and switches for the purpose of storing coal taken from the mine until the same should be taken away by the railroad company; that there were several side tracks constructed side by side and located a number of feet distant from the mine shaft, and in order to reach these tracks with the cars which were loaded at the mine, tracks were built from the shaft leading down to the side tracks where the cars were so stored. The tracks leading from the shaft to the side of the tracks were built on a steep incline and the cars moved down said incline by their own momentum, after having been started at the mine. The method of starting at the mine was to haul an empty car by team and bump it against the car loaded and thus start the loaded car down the track; sometimes one car was sent down this track, other times numerous cars were sent. Usually cars were sent down this track in charge or under the control of a man upon them for the purpose of operating the brakes and stopping them upon the side tracks when they reached the proper place.

The duties of the deceased required him to handle and take these cars from the shaft down to the side track and see that they were put upon the proper tracks and to couple them together when so put upon said side tracks. Just prior to the accident deceased took a number of cars down this incline and stopped them at the proper place; he got off the cars and

started back toward the shaft along the tracks toward the point where other cars were standing ready to be started down this track to the proper side track. Instead of continuing on his way, toward the shaft, to these cars, he stepped between two cars upon one of the side tracks. The evidence does not definitely disclose the purpose for which he went between these cars and the only evidence relating thereto consists of a statement made by the deceased after he had been injured to a relative who went to the place where he was lying. The deceased stated in this conversation that he went between the cars for the purpose of coupling the cars. The only other evidence offered by appellee on this question was that of the father-in-law of deceased, who was a number of rods away from the point of injury and across several side tracks on which loaded cars were standing and who testified that deceased went between the cars for the purpose of coupling them. From the location of the position from which the father-in-law was it is very doubtful whether or not he could see or ascertain for what purpose the deceased went between the cars and his evidence is more a conjecture than a positive fact.

The evidence of the relative as to what deceased had said to him a short time after the accident was objected to and was admitted over objection of appellant. The admission of this testimony was error; it was not a part of the *res gestæ* and should not have been admitted. The court having admitted this evidence over objection of appellant it was not error for appellant to offer evidence of the same class for the purpose of meeting the evidence wrongfully admitted upon behalf of appellee and to meet this evidence one of the appellant's witnesses testified that deceased informed him he stepped between the cars to urinate, and appellee contends that by offering this testimony appellant waived its objection to the evidence offered on this question by appellee. The offering of such evidence by appellant does not estop or bar appellant from afterwards insisting upon the error committed by the court in admitting the evidence objected to. Chicago City Railway Company vs. Uhter, 212 Ill. 174.

It is insisted by appellant that the reason why the plaintiff's intestate went between cars was for the purpose of attending a call of nature and that the indication of this was apparent at the time when deceased was found to have been injured and for a considerable time thereafter by evidence as shown of a wet spot between the cars where he had been standing and it is insisted that the purpose of plaintiff's intestate in going between the cars was not in the line of his duty and for which appellant would not be responsible; and that in so going between the said cars that he was not in the exercise of due care and caution.

The evidence discloses further that while appellee was walking towards the shaft of the mine and before he had gone between these cars the man in charge at the shaft started the cars down the incline and that the deceased knew these cars were standing at this point ready to be started and appellant insists it was negligence on his part to go between the cars at such time.

The evidence further discloses that deceased had been in the employ of appellant for a considerable length of time; that he was familiar and conversant with the construction of the incline track and the location of the side tracks and was familiar with the method and manner adopted by appellant in the handling and operation of its said cars and the means adopted by it for the purpose of causing the cars to be passed from the mine shaft to the side tracks where they were stored, and having been employed for the purpose of assisting in the moving of these cars and the caring for them upon the side tracks in this manner, that the cause of the injury was one of the ordinary assumed risks of the plaintiff's intestate in his employment.

Of the instructions complained of by appellant the seventh instruction given on behalf of appellee is as follows:

"With reference to the question of assumed risk, the jury are instructed that a servant assumes only such risks as are usually and ordinarily incident to his employment, and which remain so, incident, after the master has taken reasonable care to prevent or remove them, or such extraordinary risks

as are so obvious, and which expose him to dangers so imminent, that an ordinarily prudent person, in anticipation of probable injury, would not enter or remain in the employment, and the question of whether the decedent assumed the risk of the injuries sustained by him, as shown by the evidence in this case, is a question of fact for the determination of the jury."

This instruction is not a correct statement of law and the giving of it was error. It is not a correct statement regarding the assumption of risk. Upon the question of assumed risk and the relation of the master and servant thereto, the risk is an assumed one whenever the servant is familiar with all the conditions and circumstances connected with his employment and the manner in which the work is done by the master, and he is not relieved from the assumption of the risk because there may be a safer method than that adopted by the master; and the master is under no obligation to use reasonable means to remove the dangers which are open and visible to the employe and known to him and who continues his employment knowing these dangerous conditions to have existed, unless the servant has made some complaint and asked for an alteration or removal of the causes and upon this question the Supreme Court in Cichowicz vs. International Packing Co., 206 Ill. 346, has said: "A servant who knows there are dangerous defects on premises where he works and does not make complaint and ask for repairs or improvements necessary for his safety, assumes the risks involved whether he acquired the knowledge before he enters the service or afterward. In either case he cannot continue in the employment and encounter the dangers without complaint or any assurance of safety or promise of repair and remedy the defect, and in case of injury hold the master liable."

And from a careful consideration of this cause this court has arrived at the conclusion that the deceased had full knowledge and information of the construction of the tracks, the location thereof and the manner in which appellant conducted its business and that by reason thereof he assumed the risk which caused his injury as one of the ordinary

risks of his employment, and we have also reached the conclusion from the facts disclosed in this case that plaintiff's intestate, by going between the cars where he was injured at the time when the other cars were coming down the incline and proceeding with the speed they must necessarily take and of which he knew they would take in proceeding down the incline, he was not in the exercise of due care and caution for his own safety and for these reasons the judgment of the lower court is reversed without remanding the cause, and the clerk is directed to enter in the judgment herein the finding of facts that the cause of the injury to plaintiff's intestate was one of the ordinary risks assumed by his employment and that he was not in the exercise of due care and caution for his own safety.

*Reversed.*